IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Gregory Barrow<br>2641 N. 31st Street<br>Philadelphia, PA 19132 | CIVIL ACTION<br>No.: |
| Plaintiff, | TRIAL BY JURY DEMANDED |
| v. | |
| City of Philadelphia<br>8001 State Road<br>Philadelphia, PA 19136, | |
| Corizon Health, Inc.<br>8001 State Road<br>Philadelphia, PA 19136 | |
| Bruce Herdman<br>8001 State Road<br>Philadelphia, PA 19136 | |
| Lolitha Trivikram, M.D.<br>8001 State Road<br>Philadelphia, PA 19136 | |
| Mohammed Haque, M.D.<br>8001 State Road<br>Philadelphia, PA 19136 | |
| Adekunie Gbadamosi, M.D.<br>8001 State Road<br>Philadelphia, PA 19136 | |
| Donna Plummer Leone, N.P.<br>8001 State Road<br>Philadelphia, PA 19136 | |
| Charlett Fentress, M.A.<br>8001 State Road<br>Philadelphia, PA 19136 | |
| Steven Ibraham, M.D. | |

1

| | |
|---|---|
| 8001 State Road | : |
| Philadelphia, PA 19136 | : |
| | : |
| Victoria Tunacao, R.N. | : |
| 8001 State Road | : |
| Philadelphia, PA 1913, | : |
| | : |
| Oluyemisi Adekunle, L.P.N. | : |
| 8001 State Road | : |
| Philadelphia, PA 1913, | : |
| | : |
| Corizon Employee John Doe | : |
| 8001 State Road | : |
| Philadelphia, PA 1913, | : |
| | : |
| & | : |
| | : |
| Corrections Officers John Doe | : |
| 1515 Arch Street, 14th Floor | : |
| Philadelphia, PA 19102 | : |
| | : |
|               Defendants. | : |
| _____ | : |

## COMPLAINT

Plaintiff, Gregory Barrow, by and through his attorney, Brian Zeiger, Esq., now alleges the following:

## PARTIES

1. Plaintiff, Gregory Barrow, is an adult individual who currently resides at 2641 N. 31st Street, Philadelphia, PA 19132.

2. Defendant City of Philadelphia is a Municipality in the Commonwealth of Pennsylvania doing business at 8001 State Road, Philadelphia, PA 19136.

3. Defendant Corizon Health, Inc. (hereinafter "Corizon") is a healthcare provider doing business at 8001 State Road, Philadelphia, PA 19136.

4.     Defendant Bruce Herdman is the Chief Medical Officer at the Philadelphia Prison System (hereinafter "PPS") and is sued in his individual and official capacities.

5.     Defendants Lolitha Trivikram, M.D., Mohammed Haque, M.D., Adekunie Gbadamosi, M.D., Donna Plummer Leone, N.P., Charlett Fentress, M.A., Steven Ibraham, M.D., Victoria Tunacao, R.N., and Oluyemisi Adekunle, L.P.N., were working in a medical capacity, and on duty, for Corizon at all times relevant to this Complaint, having a business office at 8001 State Road, Philadelphia, PA 19136, and all sued in their individual capacity.

6.     Defendant Corizon Employees John Doe are believed to be adult citizens of Pennsylvania. Defendants Doe are being sued in both their individual and official capacities. Defendants Correctional Officers John Doe have a business office at 8001 State Road, Philadelphia, PA 19136.

7.     Defendant Correctional Officers John Doe are believed to be adult citizens of Pennsylvania. Defendants Doe are being sued in both their individual and official capacities. Defendants Correctional Officers John Doe have a business office at 1515 Arch Street, 14th Floor, Philadelphia, PA 19102.

8.     At all times material hereto, the Defendants acted under color of law and within the course and scope of their employment, pursuant to the customs, policies, practices, ordinances, regulations, and directives of the City of Philadelphia.

## JURISDICTION AND VENUE

9.     This action is brought pursuant to 42 U.S.C. § 1983.

10.    Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343.

## FACTUAL BACKGROUND

3

11. Plaintiff re-alleges each and every averment as set forth previously, as if the same were set forth here in full.

12. From November 2021 through December 2021, the City of Philadelphia contracted with Corizon to provide health care to all prisoners and pretrial detainees housed in the Philadelphia Prison System (hereinafter "PPS").

13. The City of Philadelphia and Corizon are responsible for creating, implementing, and enforcing policies, practices, and procedures to ensure that all pretrial detainees and prisoners are provided proper medical and healthcare while in their custody.

14. At the time, Plaintiff was a 61-year-old male with a history of health problems.

15. Previous to the time of instant matter, Plaintiff had a spine stimulator implant in his body to manage pain from three right hip surgeries and two ventral hernia repairs.

16. Further, since the surgeries, Plaintiff was permanently on blood thinners due to a history of Deep Vein Thrombosis (hereinafter "DVT").

17. During Plaintiff's initial incarceration, November 25, 2021, Plaintiff submitted sick call slips for a lump on his right buttock and associated pain, all of which were ignored.

18. Unrelated to the instant matter, Plaintiff received blood thinner medication from the prison. Plaintiff was routinely transported to the medical center at the Curran Fromhold Correctional Facility (hereinafter "CFCF") for the blood thinner medicine.

19. From November 25, 2021, through December 3, 2021, Plaintiff submitted multiple sick call slips and grieves in relation to the lump on his right buttocks, all of which were ignored.

20. By happenstance, on December 3, 2021, Plaintiff saw an unknown female doctor and asked her for help with what he believed to be a pimple or lump on his right buttock. Once she

4

realized Plaintiff was suffering from a boil on his right buttock, she immediately ordered treatment.

21. Based on information and belief, had Plaintiff not asked the doctor for help directly, he would have never received treatment for boil.

22. On or about December 3, 2021, medical records indicate Plaintiff was prescribed Bactrim, an antibiotic, by Defendants Haque and Tunacao to treat the lump on the right buttock.

23. Based upon information and belief, Plaintiff had a boil on his right buttock, also referred to as cellulitis or an abscess, infected with Methicillin-resistant Staphylococcus aureus (hereinafter "MRSA").

24. The Bactrim was not a strong enough medicine for Plaintiff's condition, which caused Plaintiff to need further care.

25. Plaintiff submitted additional sick call slips because the condition of the boil was worsening.

26. The doctors for the City of Philadelphia and Corizon at PPS did not follow up or provide additional care for Plaintiff for six days.

27. As a result, on December 9, 2021, Plaintiff's condition critically worsened, so Plaintiff was ordered to be transported outside of the CFCF to a hospital for care.

28. Plaintiff was transported from the CFCF to Jefferson Hospital at approximately 4 pm on December 9, 2021, for treatment for the lump on his buttock. The order was made by Defendants Donna Pummer Leone and Lalitha Trivikram.

29. Plaintiff remained at Jefferson Hospital until 7:00 a.m. on December 10, 2021, when for no reason, John Doe Corrections Officer Defendants transported him back to CFCF before he

could receive treatment for the boil on his buttocks.

30. Defendant Ibraham saw Plaintiff on December 10, 2021, and sent Plaintiff back to his cell for sleep. Ibraham knew Plaintiff needed a more potent antibiotic but did not administer any new antibiotic. Instead, Defendant Ibraham contacted a doctor at Nazareth and waited until the next day to have Plaintiff sent to Nazareth hospital for additional treatment.

31. On December 10, 2021, at 7:00 p.m., Plaintiff was transported to Nazareth Hospital, where he received surgery for the boil sometime on the morning of December 11, 2021.

32. After the procedure, Plaintiff was prescribed Clindamycin by the doctors at Nazareth Hospital, which is a much more potent antibiotic than Bactrim.

33. Plaintiff remained at the hospital for seven days in extreme pain due to the lack of care provided by the Defendants.

34. On December 16, 2021, Plaintiff returned to the prison with an order that he remain on Clindamycin.

35. On December 16, 2021, Defendant Haque acknowledged in Plaintiff's progress note that Plaintiff was to remain on Clindamycin.

36. Clindamycin was never dispersed to Plaintiff by any Defendants or any employee of the Defendants City of Philadelphia or Corizon.

37. Upon return to the CFCF, Plaintiff was not given Clindamycin but instead returned to Bactrim.

38. On December 17, 2021, Nazareth Hospital contacted the PPS to inform the Corizon staff that Mr. Barrow tested positive for MRSA while at Nazareth Hospital days before.

39. On December 17, 2021, Plaintiff was prescribed Clindamycin by Defendant Trivikram.

40. Again, Clindamycin was never dispersed to Plaintiff by any Defendants or any employee of the Defendants City of Philadelphia or Corizon.

41. However, on December 20, 2021, Plaintiff's medical records indicate he was no longer prescribed Clindamycin.

42. The individual Defendants told Plaintiff that he should have Bactrim remaining in his cell and should continue to take the Bactrim from his cell.

43. From December 20, 2021, through December 30, 2021, Plaintiff was seen for various medication reviews by Defendant Corizon staff, including the individual Corizon Defendants, but was not given Clindamycin or any other antibiotic. The individual Defendants who reviewed Plaintiff's medication include but are not limited to Defendants Adekunie Gbadamosi, Lalitha Trivikram, Charlett Fentress, and Oluyemisi Adekunle, L.P.N.

44. Plaintiff was not given the proper treatment for MRSA and wound care after the procedure for the abscess.

45. On December 30, 2021, Plaintiff met with Defendant Ibraham and complained of continued pain from the wound from the surgery and the wound dressing. The medical records indicate Defendant Ibraham knew Plaintiff was not given Clindamycin but instead was taking Bactrim from his cell.

46. On or about December 31, 2021, the PPS released Plaintiff from custody.

47. On January 10, 2022, Plaintiff went to Roxborough Hospital near his home for treatment for the wound. The doctors at Roxborough Hospital treated the wound and gave him a dressing. The Doctors told him he would be better suited to return to Nazareth Hospital for future care.

48. On January 11, 2022, Plaintiff voluntarily returned to Nazareth Hospital with worsening

pain and drainage from the buttock wound from the site of the previous abscess. Plaintiff was diagnosed with cellulitis and a new abscess due to the lack of care from the Defendants.

49. Plaintiff's wound was again cleaned and re-dressed. Plaintiff was discharged with new antibiotics.

50. Since the incident, Plaintiff received home health care to treat the wound and the MRSA infection.

51. Since the incident, Plaintiff has seen the treating Physician from Nazareth twice for care and has been a regular patient with a dermatologist for wound care management.

52. Based upon information and belief, had Plaintiff been given proper care by the Defendants from the time of his initial complaints regarding the lump on his buttock in late November 2021, Plaintiff would not have needed surgery and would not have had a continued MRSA infection.

53. Plaintiff is now permanently disfigured. In addition, he has a massive dent in his right buttock due to the infections and surgeries due to the lack of care provided by the Defendants.

54. During the time period of Plaintiff's incarceration, he was personally examined and treated by all of the Defendants who are sued in their individual capacity in the instant action: Lolitha Trivikram, M.D., Mohammed Haque, M.D., Adekunie Gbadamosi, M.D., Donna Plummer Leone, N.P., Charlett Fentress, M.A., Steven Ibraham, M.D., Victoria Tunacao, R.N., and Olyyemisi Adekunle, L.P.N. All of the Defendants mentioned in this paragraph had personal involvement with Plaintiff during his incarceration, as belied by Plaintiff's medical records and progress notes.

55. As a result of the lack of care during his incarceration at the CFCF, or alternatively, as a

result of the deficient medical care at the CFCF, Plaintiff required surgery that could have been avoided, suffered in immense pain, suffered from a constant MRSA infection, and is now permanently disfigured.

56. As a direct and proximate cause of the Defendants' actions and inactions, Mr. Barrow suffered immense physical injuries.

57. Defendant Bruce Herdman was the medical director and chief medical officer at the PPS during the time period of Plaintiff's incarceration.

58. Defendant Herdman was the final decision maker of medical policy and treatment for all prisoners at the PPS during the time period of Plaintiff's incarceration, subject to the instant action.

59. Defendant Herdman established and maintained deficient policies and procedures related to medical care: minimal medical care due to budgetary concerns, restricting reasonable medical treatment, failure to provide basic medical care for an obviously known medical condition such as MRSA, a general failure to fix or correct an obviously deficient sick call system, inadequate training of medical and corrections personnel, inadequate supervision of medical and corrections personnel, and failure to provide specialist consultation.

60. Plaintiff hereby alleges Defendant Herdman was personally involved in the decision-making that led to the averments contained in the aforementioned paragraphs.

61. The City of Philadelphia and Corizon failed to create, implement, and enforce policies, practices, and procedures to ensure that proper care was provided to the Plaintiff.

62. The City of Philadelphia and Corizon failed to ensure medical personnel properly examined inmates complaining of physical health complaints while incarcerated.

63.     The City of Philadelphia and Corizon failed to provide medical personnel and staff to treat inmates with physical complaints and medical conditions while living in the Philadelphia Prison System.

## COUNT I:
## FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE
## FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983
## PLAINTIFF V. ALL DEFENDANTS

64.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

65.     Plaintiff repeatedly asked for care for a painful lump on his right buttock.

66.     Defendants did not properly investigate or treat Plaintiff's medical complaints.

67.     Defendants did not properly learn the cause or condition of Plaintiff's medical complaint.

68.     Defendants provided Plaintiff with little to no care for the painful lump for 14 days.

69.     As a result of the lack of care, Plaintiff required surgery to remove the abscess that could have been avoided had Plaintiff been treated medicinally and given prompt care.

70.     Further, even once Plaintiff was returned to the CFCF, the medication order from the treating hospital was ignored, and Plaintiff was returned to a substandard antibiotic.

71.     As a result, Plaintiff's wound did not heal properly.

72.     Further, Plaintiff remained infected with MRSA.

73.     After Plaintiff was released from prison, he returned to the treating surgeon, where he learned his wound was still infected with MRSA and needed additional care.

74.     Defendants failed to protect Plaintiff's physical wellbeing.

75.     Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's

wellbeing ignored Plaintiff's complaints and requests for medical care.

76. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's wellbeing ignored Plaintiff obvious need for medical treatment and evaluation.

77. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's wellbeing denied Plaintiff of medical care.

78. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's wellbeing failed to ensure that Plaintiff received prompt medical attention;

79. Defendants acted deliberately, recklessly, and with a conscious disregard for the obvious risk that the Plaintiff had a serious medical issue.

80. Defendants' actions caused Plaintiff to suffer needlessly, served no penological purpose, and caused him to have surgery and become permanently disfigured.

81. As a direct and proximate cause of Defendants' actions, the Plaintiff suffered an injury, immense physical pain, humiliation, fear, and ultimately death.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, delay damages, attorneys fees, and allowable costs of suit and brings this action to recover same.

**COUNT II:**
**SUPERVISOR LIABILITY –**
**FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983**
**PLAINTIFF V. DEFENDANT PHILADELPHIA, CORIZON, HERDMAN and D.O.E.**

82. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

83. Defendants City of Philadelphia, Corizon, and Doe were deliberately indifferent to the needs of pretrial detainees being held in the PPS.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

84. Upon information and belief, Defendants were aware that certain policies and customs posed a grave danger to behavioral health patients detained in the Correctional Facility, including the Plaintiff.

85. Defendants City of Philadelphia, Corizon and Herdman maintained a policy of inadequate staffing to meet the medical needs of the inmates at the PPS.

86. Herdman and Corizon did not properly refer the Plaintiff to a proper specialist to treat his complaints and requests for medical care.

87. The policy, procedures and standard of having inadequate care for MRSA patients were defective and therefore failed, which ultimately caused Plaintiff to have a permanent disfigurement.

88. In spite of such knowledge, Defendants did nothing to implement corrective policy or correct custom which Defendants knew posed a serious danger to inmates and pretrial detainees, including Plaintiff.

89. The Defendants were deliberately indifferent to the wellbeing of inmates detained in PPS, including the Plaintiff.

90. Defendants knew of their supervisory failures and knew that MRS patients were not receiving adequate treatment, but deliberately failed to correct the problem.

91. Defendants were aware of a substantial risk that MRSA patients would not receive proper medical care.

92. Defendants were deliberately indifferent to the consequences of their established policies and customs.

93. Defendants establishment and maintenance of the above-mentioned policies and customs

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

directly caused the Plaintiff to be deprived of his Constitutional rights.

94. As a direct and proximate result of Defendants deliberate indifference, Plaintiff suffered immense physical pain, humiliation, fear, physical injuries and death.

95. Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which she has no present knowledge.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, delay damages, interest, attorneys fees and allowable costs of suit and brings this action to recover same.

## COUNT III:
## MUNICIPAL LIABILITY
## FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983
## PLAINTIFF V. DEFENDANTS CITY OF PHILADELPHIA AND CORIZON

96. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

97. Based upon information and belief, the Defendant City of Philadelphia has outsourced the medical care for inmates to the Defendant Corizon.

98. Defendants City of Philadelphia and Corizon promulgated and maintained policies and customs, as pled at length above, which were the moving force that caused the Plaintiff's constitutional and statutory rights being violated.

99. Defendants City of Philadelphia and Corizon failed to adhere to protocol in detecting and safeguarding inmates when inmates made medical complaints.

100. Defendants City of Philadelphia and Corizon maintained a policy of not staffing the PPS with the proper doctors and medical staff to treat the medical needs of inmates.

101. Defendants City of Philadelphia and Corizon maintained a policy of not properly

Levin & Zeiger LLP
1500 JFK Blvd, Suite 620
Philadelphia, Pennsylvania 19102
215.546.0340

examine and evaluate pretrial detainees in regard to their medical needs.

102. Defendants City of Philadelphia and Corizon maintained a policy of not having a medical provider to give proper treatment for MRSA to inmates at the PPS.

103. All of the pled policies and customs were implemented before, during, and after Plaintiff's detention at the Correctional Facility.

104. Defendants knew of the dangers posed by these policies and customs.

105. Specifically, Defendants City of Philadelphia and Corizon were fully aware prior to the time period of Plaintiff's incarceration of the serious and extreme danger posed by not properly providing medical care to inmates with MRSA.

106. Despite this prior knowledge, Defendants City of Philadelphia and Corizon took no steps to enact proper policies to remedy the problematic policies and customs.

107. Had Defendants City of Philadelphia and Corizon, properly promulgated appropriate protocol, not had an improper custom or adequately trained and/or supervised the individual defendants the Plaintiff would have received appropriate care and supervision.

108. Defendants City of Philadelphia and Corizon was deliberately indifferent to the constitutional rights of Plaintiff.

109. Defendants City of Philadelphia and Corizon's policies and customs were a direct and proximate cause of Plaintiff's injuries and damages.

110. As a direct and proximate result of Defendants City of Philadelphia and Corizon's policies and customs, Plaintiff suffered immense physical pain, humiliation, fear, physical injuries, infection, the need for surgery, and permanent disfigurement.

111. Plaintiff also makes a claim for such injuries, damages and consequences resulting from

the incident of which he has no present knowledge.

WHEREFORE, Plaintiff's claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, delay damages, interest, attorneys fees and allowable costs of suit and brings this action to recover same. More specifically, Plaintiff is **not seeking punitive damages related to Count III the Municipal Liability claim.**

**COUNT IV:
NEGLIGENCE (GENERALLY—NON-MEDICAL NEGLIGENCE)
(PENNSYLVANIA LAW) – PLAINTIFF V. DEFENDANTS CORIZON AND ALL INDIVIDUAL DEFENDANTS**

112. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

113. Defendants Corizon, and all individual Defendants owed Plaintiff a duty of care.

114. Defendants Corizon, and all individual Defendants breached their duty of care to Plaintiff.

115. The negligent conduct of the individual defendants, in the course and scope of their employment with the Defendant City of Philadelphia and Corizon and/or as the agent of Defendant City of Philadelphia and Corizon, consists of the following:

   a. negligently and recklessly failing to properly treat and care for patients with MRSA.

   b. to ensure that all medical providers could properly provide the care necessary and treatment to the Plaintiff;

   c. negligently and recklessly failing to properly administer necessary medication to prevent Plaintiff from needing surgery which could have easily been avoided but for the Defendant's negligence;

   d. negligently and recklessly failing to properly maintain and properly monitor records in

    order to discover medical issues, causes, and conditions to be treated with necessary medical care and medication.

    e. negligently and recklessly not examining the Plaintiff for his complaints regarding the lump and pain on his buttocks.

    f. negligently and recklessly not physically examining the Plaintiff.

    g. negligently and recklessly failing to learn why the Plaintiff was not seen for his complaints regarding the lump and associated pain on Plaintiff's buttock.

    h. communicate to superiors and peers of the Plaintiff's complaints.

    i. negligently and recklessly failing to provide appropriate supervision to the Plaintiff.

    j. negligently and recklessly not monitoring Plaintiff while in their care.

116. As a direct and proximate cause of Defendants' negligence, Plaintiff's experienced significant pain and suffering.

117. As a direct and proximate cause of Defendants' negligence, Plaintiff is permanently disfigured, and he endured significant pain and suffering, both physical and emotional.

    WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, delay damages, interest, attorneys fees and allowable costs of suit and brings this action to recover same.

## COUNT VIII:
## VICARIOUS LIABILITY—RESPONDEAT SUPERIOR
## PLAINTIFF V. DEFENDANT CORIZON

118. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

119. The negligence of Defendant and Corizon, by and through their agents, servants, and/or

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

employees, within the course and scope of their agency and employment.

120. Upon information and belief, Defendant Corizon, employed or hired the individual defendants to provide medical services at the Philadelphia Prison System on their behalf.

121. The individual employees were providing medical services at the time of the incident during the course of and within the scope of their employment.

122. The individual defendants' medical services was for the purpose of benefiting Corizon.

123. Plaintiff makes a claim for such injuries, damages, and consequences resulting from the in the individual Defendants negligence as outline above, which Corizon is vicariously liable.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, delay damages, interest, attorneys fees and allowable costs of suit and brings this action to recover same.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to each count and each Defendant.

RESPECTFULLY SUBMITTED,

August 19, 2022                         /s/Brian Zeiger
DATE                                    BRIAN ZEIGER
                                        IDENTIFICATION NO.: 87063
                                        LEVIN & ZEIGER, LLP
                                        TWO PENN CENTER
                                        1500 JFK BLVD STE 620
                                        PHILADELPHIA, PA 19102
                                        215.546.0340
                                        zeiger@levinzeiger.com